Case 14-1225, Natural Resources Defense Council Petitioner v. U.S. Nuclear Regulatory Commission et al. Mr. Kristol for the petitioner, Mr. Adler for the respondent, and Mr. Fagg for the intervener. Good morning. Good morning, Your Honors. Howard Kristol for the petitioner, Natural Resources Defense Council, and I'd like to reserve three minutes for rebuttal. Your Honors, this petition is about the consideration of severe accident mitigation alternatives and the relicensing of the Limerick Nuclear Power Plant. Only certain parties may challenge commission decisions. Those admitted as parties through a petition to intervene before the commission and granted an administrative hearing. In this case, the Atomic Safety and Licensing Board granted NRDC's request for a hearing, finding certain issues warranted consideration as an evidentiary matter with expert testimony, including, for example, whether certain severe accident mitigation measures that had been considered recently for other boiling water reactor plants should be considered in the relicensing for Limerick. However, the commission reversed, finding that any hearing is precluded by the commission's regulations because severe accident mitigation had been considered for the Limerick plant when the plant was initially licensed more than 25 years ago. The key premise of the commission's argument is that issues related to severe accident mitigation at the Limerick Nuclear Power Plant and its relicensing for an additional 20 years were somehow resolved in the generic environmental impact statement for relicensing. That generic EIS, if I may call it, applies to all power plants across the country because the commission's approach is to resolve generic issues as to all plants in a single document, the generic EIS, and then to do site-specific supplements for each plant as it comes up for relicensing. They say you're challenging a rule. You can't challenge a rule in this forum because the rule covers this situation. That's right. And the rule is a codification. It's all part of this generic EIS, which is part of a rulemaking done in 1996. And the commission's position, as you say, is that this issue is somehow resolved by rule. But the problem is the rule refers to this specific plant, correct? That's correct, Your Honor. This is just so we're all on the same page. There's a lot of regulations at issue here. This is 10 CFR 51.53C32L, which I'd like to call the accident mitigation regulation. Let's call it L. L, let's call it L. That would be even better. Thank you. That regulation says if the staff has not previously considered severe accident mitigation alternatives for the applicant's plant in an environmental impact statement or related supplement or in an environmental assessment, a consideration of alternatives to mitigate severe accidents must be provided. The regulation itself doesn't mention LIMERIC, but certainly the rulemaking, we're not arguing that the rulemaking doesn't purport to say that because of this regulation, LIMERIC does not have to be considered, that severe accident mitigation as to LIMERIC doesn't have to be considered during relicensing. But there's another regulation. This is 10 CFR 51.53C34, which I'll call the new information regulation, unless we prefer to call it 4, which is fine. That regulation requires, and I quote, this refers to each individual plant supplement, it says those environmental review documents must address, quote, any new and significant information regarding the environmental impacts of license renewal of which the applicant is aware. And in this case, the issue is how you reconcile those two requirements. That is, the idea that certain issues are off the table in the relicensing context because somehow they've been resolved in the generic EIS, and how you're going to address new and significant information that may have come up later. The commission tries to, yes? Just be clear here. What you say you're entitled to is a contested hearing where you get to put your evidence on, the applicant gets to put his response, commission, staff, or whoever. All right. So, the commission says, in part, we have a formula that we used in this generic development. And we decided that given the formula, it's very unlikely that anything's going to happen later on ever. That would change our analysis. And it says, if we've approached this in the wrong way, then you ought to file a petition for a rulemaking to change this scheme or get a waiver of L. As I understand the commission, it also says that a number of other things are ongoing, such as these facilities are making changes on their own, and the commission has a procedure for considering whether or not additional safety measures are needed. And that's quite separate and apart from the relicensing proceeding itself. So, as I read the commission's brief, it's saying not only can you not challenge L in this process, but you have other avenues open to you where the things you're concerned about can be raised in a contested manner. And furthermore, we, the commission, have given the staff your comments, and the commission, as I understand, I'll ask the commission this, but it's interpreted its intervention rule so that there's no later time for you to move for intervention, such that when the supplemental draft EIS is submitted to the commission, you would have an opportunity then to come in and challenge what's there. That's right. So, you've raised three issues. Let me start with the third one, because I think it's absolutely important and ties back to the first two, which is that, as you note, in their final denial of our petition, the commission said we're not entitled to a hearing, but it said, and I'm quoting now from their denial at 22, which is JA395, quote, NRDC has identified information that bears consideration in our environmental review of Exelon's application, and they say outside the adjudicatory process. Therefore, we refer NRDC's waiver petition to the staff as comments on the limerick draft supplemental EIS and expect the staff will incorporate any new SAMA-related information that it finds to be significant in the final EIS. So, the commission decided that the information that NRDC was presenting needed to be considered in the site-specific limerick relicensing proceeding, but its position here is no matter what happened with that when the commission put out its final, we have no avenue to challenge that decision. And now that goes back to the first part of your question, which is true that the commission in the rulemaking purported to say that if this issue had been considered in the original licensing proceeding, it need not be reconsidered in licensing. The problem with the commission's approach is that Category 1 issues were actually considered. They were considered for relicensing in the generic EIS. So, for example, a Category 1 issue like bird collisions with cooling towers. They looked at whatever information there was at relicensing, this is in the 90s, about that issue, and they decided this does not need to be considered further in site-specific. They did not do that as to severe accident mitigation. They did quite the contrary. They said in the generic EIS, and I'm now reading from JA584, that, quote, a site-specific analysis of measures that mitigate severe accidents needs to be conducted in each licensing. More recently, in 2013, the commission issued an update to the generic EIS, and in that update, this is cited in our reply brief at page 10, quote, plant-specific mitigation measures vary greatly based on plant designs, safety systems, fuel type, operating procedures, local environment, population, and siting characteristics. Again, making clear that the commission's view is that this is not a generic issue that can be resolved generically. Now, there's a reason for that. In 1988, I believe it was, in the limerick ecology case, the Third Circuit rejected the commission's effort to resolve severe accident mitigation generically and said, in particular, because issues vary tremendously among plants, including, for example, population. This plant is near a very significant population center. The degree to which and the way you're going to look at severe accident mitigation is going to vary greatly depending on the plant. So, unlike all other issues, which were resolved generically in the generic EIS for relicensing, the SAMA analysis was not done generically. For all other plants, other than the three they purported to exclude, severe accident mitigation is going to be considered on a site-specific basis. And we're left with this regulatory and review black hole, because severe accident mitigation as to limerick was resolved neither in the generic EIS and under the commission's view is not going to be resolved in the site-specific limerick EIS. Whereas every other issue that's material to licensing is going to be resolved in one or the other. And then to the second part of your question, which had concerned the commission's arguments about how these issues are going to be addressed elsewhere, and other procedures, there's this thing called internal processing of events and external events. There are various acronyms. All sorts of steps the commission says it's going to take to address these problems. That approach was rejected by this court in the first Union of Concerned Scientists case, which is 735 F. 2nd, 1437, where the commission argued that certain safety procedures, because they were going to be considered close to the time of licensing, it was appropriate to consider them outside the hearing process, that they could be removed altogether. But at the same time, the commission agreed that that issue was material to its licensing decision. And the court said, if you have an issue that's material, you cannot, consistent with the Atomic Energy Act, exclude it from a hearing. That's exactly what the commission has done here. They've taken an issue, they concede it's material to relicensing, the consideration of severe accident mitigation. Not only do they consider it material, they sent it to the staff to include in the site-specific EIS for Limerick. And yet they are saying that we are categorically barred by their regulation from even presenting our evidence through the standard contention admissibility requirements of, to cite another regulation, excuse me, the contention admissibility requirements, which are 10 CFR 2.309F. Those are the basic threshold criteria that have to be satisfied to bring a contention forward. You have to raise a specific issue of law. You have to explain its basis. You have to show it's within the scope of the proceeding. Those are the factors that the Atomic Safety and Licensing Board considered and decided that we'd satisfied as to these contentions. But the commission's view is we can't get there. We're not entitled to the consideration of our contentions under those basic factors because of this bar of this rule. And our view is that that cannot be consistent with the Atomic Energy Act, with NEPA, which require both that environmental issues be resolved during relicensing, which is a major federal action. It's another critical point that the commission overlooks. They would suggest that somehow relicensing this nuclear power plant is itself somehow tiered off of the licensing, and therefore it's appropriate to go back to the limerick licensing and the consideration of severe accident mitigation at that stage. However, the commission acknowledges, this Court has noted in the New York case that we cite in our briefs, that relicensing a nuclear power plant is a new major federal action. Therefore, material issues have to be resolved. I have to admit that I find the procedures here somewhat difficult to follow. But if I understand what you are essentially arguing, it is that some of these severe accident mitigation alternatives cannot be handled generically. That is what the rule purports to do, to say we can have a generic EIS. So what the commission says is, if you have a problem with the rule, then you need to challenge it in rulemaking. And if that is your problem, that you're saying this isn't an appropriate rule, why doesn't that work? Well, the problem, Your Honor, is that, in fact, the commission did not decide that severe accident mitigation could be resolved generically. In fact, there were two petitions that we cite in our brief, this is in our opening brief on page 36, by the industry asking for SAMAs to be removed from this process and to be resolved generically. And the commission rejected that because, as I said before, in multiple places the commission has said, following Limerick Ecology, that severe accident mitigation differs significantly depending on the plant and that it cannot be resolved generically. So the thing that's confusing, Your Honor, is what they did in this generic EIS and in this rule. Because they resolved certain issues generically, like cooling towers and bird collisions, and as to severe accident mitigation and certain other issues, they said they have to be resolved in a plant-specific basis. But then there's this carve-out that's the basis. I just want to make sure that I understand or try to understand what's going on here. Did they say you couldn't ever do it generically, or did they simply say if we haven't done it at least once, then it has to be site-specific? They said that they can't. Remember, this is an important distinction. Doing it generically means that the issues are similar enough, sufficiently similar to all plants, that there's no site-specific variable that needs to be considered. And that the key thing they decided is that severe accident mitigation doesn't fit that criteria. It's not sufficiently generic that it can be resolved as to all plants. That's the reason why, for plants that never considered severe accident mitigation during relicensing, they are going to do a site-specific severe accident mitigation analysis. But what they're trying to say, what they're arguing, and that's what this case turns on, is to suggest that, well, if we did consider it in the original licensing phase, we don't have to reconsider it during relicensing. And the problem with that, as I point out, is that relicensing is a new major federal action. And therefore, environmental issues have to be considered and resolved, particularly new and significant information about environmental issues. Okay, so I go back to my question then. Your problem is this carve-out, which is part of the rule. So why isn't a challenge to the rule a way to deal with that? Well, the issue is the context in which this problem arises. Our view and our position has been that this rule could not be read, consistent with the Atomic Energy Act and with NEPA, to exclude the consideration of new and significant information about SAMAs in the plant-specific limerick relicensing. And if we're right about that, that's where we are now, the plant-specific relicensing. We should be entitled to a hearing or at least consideration of our contentions in that hearing process. The rule-making petition avenue is to change a rule that the Commission has enacted that applies to all plants, like the cooling towers regulation. If a petitioner has a problem with that regulation, the right avenue is for them to submit a rule-making petition to change that regulation's application to all plants. The regulation we're talking about, its application in this instance, only applies to the limerick nuclear power plant. There's no other power plant across the country that it applies to. So it's not a generic determination, although they would have us believe it is. It's a site-specific determination. And now we're trying to bring forward the list of people. There is another avenue to challenge it. The waiver, Your Honor? No, another avenue to challenge even the site-specific. I mean, you could do the petition for rule-making. Yes, and just to be clear, what the petition for rule-making would ask is to change this regulation's application to the limerick nuclear power plant. Now, I understand it may be silly from your perspective and maybe from mine, but there is a way to do this. Yeah, well, and if I could just spend a minute on the other way that the Commission at least gave lip service to our being able to do this is to ask for a waiver of the regulation, which we did, right? And so our threshold argument is that the waiver reconcile these two regulations because the Commission has no argument for how to apply the new information regulation I cited in a way that gives it meaning in this context given their interpretation. But we've also suggested if the only avenue to us to have our issues considered in the limerick site-specific relicensing proceeding is to somehow change this regulation, we satisfy the waiver criteria, which allows for a waiver of a regulation when, quote, there are special circumstances with respect to the subject matter of the particular proceeding. The issues we are raising are specific to limerick. The government argues our issues are not unique because we're raising new information. And, of course, there will always be new information, but how can there be a waiver system? And I should mention that the Commission has never in its history granted a waiver, but how can we give any meaning to the waiver option if, to satisfy the unique criteria, you're disallowed if all you're raising is new information? That's the only kind of information that would be relevant to consideration of a waiver. So we've suggested several pathways that we think the court could thread the statutory scheme that would give us what we believe we're entitled to, which is to have our contentions considered against the same criteria of the Atomic Safety Licensing Board. First, the court could read those two regulations, the L regulation and the new information regulation, can harmonize them to read that first regulation to apply only to basically to allow consideration of new and significant information, to read that first regulation not to exclude new and significant information. Alternatively, the court could find that we fit to satisfy the criteria for a waiver. And, finally, our view is that there is just no way to read this scheme consistent with the various statutes that would preclude our right, and, therefore, if the court were to find that neither approach is appropriate, the court should find that this regulatory scheme just is not consistent with the Atomic Energy Act and with the National Environmental Policy Act. To what extent are you arguing that our opinions in the Union of Concerned Scientists 1 and 2 have basically already decided this question? Well, I do think we believe that this case is controlled by particularly the first decision, but certainly also by language in the second decision, which basically rejected an as-applied challenge to, well, it wasn't to these regulations but to other regulations, but made clear that any interpretation of the Commission's regulations that excludes parties from their statutory right to a hearing will not be upheld. Well, and the second opinion says, as I understand it, and I'll ask the Commission, obviously, what it understands what I mean, that it can't be a regulatory scheme that excludes the matter from being brought in a hearing by anyone. Yes. The Commission mischaracterizes... So, if you were just duplicating some other party's arguments, you would have no right to intervene. That's right. That's exactly right. But another important point is that the Commission mischaracterizes our reliance on those cases to suggest that we're saying we have an automatic right to a hearing. I want to make sure that's absolutely clear. All we're saying is our, just like any other party, our contention should be considered against the 2.309 contention and disability factors, which the Atomic Safety and Licensing Board considered. We meet the criteria, as the Board said, and our contentions go forward. If for some reason our contentions are not within the scope of the proceeding or otherwise deficient, maybe we can't go forward. We're not saying an automatic right. What we're saying is there cannot be an automatic bar, which is what the Commission has applied to us here. All right. Thank you. I'll reserve my time for rebuttal. All right. May it please the Court, my name is James Ather. I represent the Nuclear Regulatory Commission in the United States. The NRC has a regulation that already answers the question NRDC wanted to litigate in the license renewal proceeding. It's a narrower question than simply what are we going to do with SAMAs generally. It refers just to a second analysis when one has already been done. What regulation is that? Well, actually we have multiple. There is the one called L. All right. So we're talking about L, right? Also, the generic EIS was codified through Table B-1 at the end of 10 CFR Part 51. And that has, as is summarized in the table under postulated accidents, has the same principle as in 51, 53, C32L. All right. NRDC's contention clearly attacked this by saying that the issue had to be addressed again for Limerick. So the Commission reasonably found that this was an attack on the rule. When that happens, there's the possibility of a waiver. The normal way to challenge it would be a rulemaking petition. Can I ask you if the Commission has ever granted a waiver? Do you know? I don't believe so. Also never been overturned on a waiver decision. The First Circuit looked at one in 2013 in the Massachusetts versus NRC case and found the NRC's decision reasonable. But it's designed not to be the normal course. It's an exception of the rule. And the general strong principle under administrative law is if we have regulations, they're not subject to collateral attack and individual adjudications. When we have regulations, we're able to rely on those individual adjudications. The Supreme Court has made that clear in a number of cases. Heckler v. Campbell in 1983. This Court in the en banc nuclear information resource service versus NRC case in 1992 chronicled this as nothing unusual about the NRC issuing a rule and then not opening that to attack and individual adjudications. That's all that's happening here. What's the problem? I realize this is not the issue, by the way, but what's the problem from the Commission's perspective if they were allowed to intervene here? NRGC claims that there's only one plant that this rule applies to. That's not true. Certainly in Limerick's own generation of SAM or SAMDA analysis, whichever term you want to use, there's a Watts-Barr reactor, two Comanche Peak reactors. NRGC makes the point that Limerick, of those, is the only boiling water reactor, but it doesn't explain why that carries the day in the Commission. It clearly doesn't. The Commission dispatched it in a footnote. I think it's footnote 82 in the CLI 13-7 decision where it pointed out, sure, Watts-Barr and Comanche Peak aren't boiling water reactors, but it's also true for them that there were additional mitigation measures looked at by future SAM analysis, or in this case would be pressurized water reactors. They didn't use the Max-2 code that future pressurized water reactor SAM analyses used, and then the Commission pointed out that there was, in its 1996 rule, it didn't envision that there was just one way to do a SAM analysis. So furthering Judge Kavanaugh's question, what does the Commission see as the problem on a practical level? In other words, there's been a generic determination. A plant has been in operation for decades.  And no matter that was previously considered can be raised by an interested party, even though the Commission determines it's material to its decision on relicensing? If it was decided in a rulemaking, and this is not a UCS-1 type rule where, I mean, if you look at the conclusion paragraph that's at the end of UCS-1, the majority opinion, it summarized the particular fact pattern it was looking at, which was the Commission was still requiring applicants to go through emergency preparedness exercises and demonstrate that they did so sufficiently, but the Commission wanted that to happen late in the licensing process, after the hearing process was over. And it was worried that it would delay licenses if it allowed a hearing on the question of whether there was emergency preparedness. So delay is the Commission's concern here? In UCS-1, that's not the issue here. Here, it's a very different regulation. It's not talking about hearings. It tells applicants, you don't have to do this analysis. It tells the NRC staff, you don't have to require applicants to do this analysis or do it yourself. The effect on hearings is a corollary just of the Heckler v. Campbell. So the only way to proceed as a practical matter is to petition for a rulemaking? That's the most straightforward and easy way. There are no hurdles in the way. And then we have a rulemaking that goes on for some time. The rulemaking is challenged in the Court of Appeals. We remand. It goes back and forth. I just want to be clear what the difference is here. I understand and I thought I understood what the Third Circuit was getting at, and I thought our cases were getting at somewhat the same thing. That if the Commission has deemed that the issue is material, it's not enough for the Commission simply to say to the staff, look at these comments. But rather, there is this obligation for a contested hearing, to provide a contested hearing. I think there are two things. For all our generic NEPA determinations, the default is that a new and significant information-type contention like NRDC brought is not an available option unless you get a waiver. That's what happened in the 2008 Massachusetts v. United States situation. But in that situation, was it mass housing? Is that the case? This was Massachusetts, the Commonwealth of Massachusetts v. United States NRC. That's right. The state had another opportunity to come in as an intervener. And the court, the First Circuit says in this context, we find no problem with what the Commission, we find no problem with the Commission's interpretation. But of course here, and I want to be clear about that, under the Commission's rules, there is, as the Commission has interpreted them, I guess, no further opportunity for intervention if you don't get the intervention granted. Under F1. I think a very important distinction in that case is why the First Circuit was talking about that was because it wanted to be sure that Massachusetts, not that they could litigate this issue as an interested state in the adjudicatory hearing, but they could take advantage of 10 CFR section 2.802D, which says that a rulemaking petitioner can ask the NRC to suspend a particular licensing proceeding. I know that. But it also said that the state had another means under the Commission's regulations to seek intervention in addition to filing a petition for a rulemaking. I think that goes to the question of whether they would be eligible under 2.802D as a, quote, interested state. And with that, you can become an interested state participant in an NRC proceeding by simply saying, you know, essentially, I want to be an interested state. I understand. My point is that that case, to me, is so distinguishable simply because the parties, not the party, but the petitioner seeking to intervene had another opportunity to become an intervener. That is not true, as I understand it, under the Commission's current rule. Right, unless they successfully got some contention in on another issue. But I don't think Massachusetts' ability to get in as an interested state would have meant it would have gotten a hearing on this issue that the Commission was saying you can't get a hearing on. So basically, if NRDC did follow the Commission's advice and challenge the rule, they would not be able to ask for the licensing proceeding to be suspended while that was resolved. Is that correct? I don't know that that's been resolved by the Commission, but I suspect the answer is one way or another. They can tell the Commission to do that. If they've convinced the Commission that there's a problem with the rule here, I think it's clear when you look at the comment process discussion 1996. The Commission knows that it can't just go forward with individual licensing proceedings if there's a problem with a generic rule. What I'm trying to figure out is whether NRDC would be a party here that would have the ability to ask for the suspension of the licensing proceeding or something like that. Because if not, the rulemaking may go on for quite some time and may not even be resolved before this licensing is concluded. So the question is, do they really, can they get at this? Council referred to this as a regulatory black hole. Are they in a situation where there's really no way to get to this? If NRDC had filed a rulemaking petition and asked us to suspend the proceeding, we would have an answer here. In the Massachusetts case, 2008, the Commission's position was that it takes a flexible approach to that party requirement. Even though Massachusetts might not be a party in the usual sense, it would be a participant in the proceeding. NRDC has been very involved in this proceeding. Ultimately, I think the goal of that is not a formal requirement that someone get party status, because it might be on a completely unrelated issue that they become a party. And so I think it's ensuring that this is some party that actually cares about that proceeding and has some link to it. But again, we would know for sure if NRDC had actually done that. Okay. Under your rule 2.309F2, it refers to participants. So what does that mean? You say NRDC has been a participant in these proceedings. Well, I mean, I suppose the question is what it means under 2.802D. They've certainly been very involved. And the Commission, I think, in the... No, let me be clear, counsel. I want to know what it means in 2.309F2. Because F2 says that participants may file new or amended environmental contentions after the deadline in paragraph B of this section. Then there's a long parenthetical. If the contention complies with the requirements in C, which are the substantive requirements, and they're talking about filing contentions based on the environmental report initially, and then based on a draft or final NRC, environmental impact statement. So my question is, if you denied intervention as NRDC has been now, is there an opportunity for it to come back once the draft supplemental EIS is prepared by staff and submitted to the Commission for approval? Yes, I believe so. If there is something new that develops in the EIS that wasn't apparent from the applicant's environmental report. I don't believe there's a bar against someone doing that if they haven't. Doing what? Getting a contention in and hearing if they haven't succeeded already on something and become a formal party. Do we have any interpretation by the Commission of this regulation? I suspect. Unfortunately, I'm not an expert in this particular issue, but there are plenty of Commission case law out there. Well, both briefs cite F, and they cite F2, but they don't talk about this particular provision, or they don't discuss it. And I just wondered whether or not there was some other opportunity in the process for NRDC once the draft supplemental environmental impact statement is prepared by staff and submitted. Could NRDC then seek intervening status as an intervener? I think my understanding is, in general, yes. I mean, here if it was the same issue, they'd face the same problem with the regulation having already addressed the question, and so they'd need a waiver still. So we don't know, at least at this point, You can't give me a cite saying that that's the way the Commission interprets this interpretation, because I wasn't sure what the word participant meant, whether it meant someone who has already been granted status, the status of intervener, or just anybody who wants to submit a comment. I don't know that the specific ones have been cited. The Commission did point NRDC to the suspension option in this case, so I would expect it wouldn't have done that. This is a suspension with regard to a rulemaking that you and Judge Brown were discussing. I'm talking about this F2. Right, which wasn't an issue before the Commission. I'm asking, since both parties have cited the regulation, what does it mean? Unfortunately, I can't give you an answer. Just being unfamiliar with the case law. Any further questions? Thank you. Counsel for intervener? Thank you. May it please the Court, Your Honor, Brad Fagg for intervener. Excellent. To pick up just on that last colloquy, and unfortunately I don't have the specific cite, but I know enough to know that if there's truly new information, there's an opportunity. It's a high burden, but there's an opportunity for a party to come in and allege. For a party? I'm sorry, not for a puritive party, for a party in the lower P sort of case to come in. And the regulations do draw a distinction between participant and party. Those are terms of art. So, again, I don't have the cite handy. We could follow it up, but I know enough to know that in response to Your Honor's question, it's a high burden, but there is that opportunity under the regulations. Could I just ask you, without dragging this out too far, but is it your understanding that what the regulation refers to as a participant is someone who has standing, but has not been granted the status of an intervener? That is my non-agency understanding of that. You corrected my, counsel's sort of nodding, so I'll take that as an affirmative. Thank you. The other point I guess I'd like to make, again, following up on some of the colloquy here, responds to some of the arguments that were made and some of the questions about the import of the Union of Concerned Scientists first decision, the fact that there is alleged to be new and significant information. I think a key point here is those arguments prove too much. If those arguments are right, then the whole Category 1 generic scheme means nothing. Because if NRDC is right here, there's no reason why you can't come into a proceeding where there is an undeniably generic determination, put aside the subtleties of this particular rule, but it sweeps all of that away because it takes away the agency's right and ability, which has been long ratified by the Supreme Court and multiple courts of appeals, to deal with things on a rule-based basis. And that, winding around to the main point here, I think, and what this case is all about, this is about NRDC does not like that rule. They don't like L. And so you heard Mr. Kristolopoulos, somehow it applies. It's not somehow it applies. It absolutely applies. It was drafted with Limerick and two other sites in mind. And that rule is once but only once, under the very specific, unique thing we're talking about here, SAMA analysis, which is, as I think the panel appreciates, not safety. It's more mitigation. It's complicated algorithms. But a very considered judgment was made. It's 602 and 3 of the Joint Appendix. In 1996, the Commission looked very hard at all of this and said, once but once is enough. Now, if there is new and significant information, that has to be looked at underneath. But it doesn't give you a right to a hearing. Just like new and significant information for a Category 1 issue doesn't give you a right to a hearing. The hearing is not the panacea and the cure-all for everything. Agencies certainly have the ability to proceed by rule, and that's what this case is all about. And, in fact, what this case is all about, I wrote it down as part of what we heard from petitioners here, if what this case is all about is Rule L, then what they needed to do and should have done and were free to do is say, Rule L is wrong, and come in with all those arguments. There would have been a decision. If Rule L was overturned, then they would have been granted, they would have been afforded an adjudicatory hearing and all the things they want here. If Rule L was not, then we could be arguing here about the merits of why or why not Rule L was appropriate. But none of that was chosen. And, again, it's a scheme that falls comfortably, I would submit, within the discretion that's afforded to the agency to manage that. Finally, I guess now, talking about the waiver issues, in a sense, not to be glib, but no good deed goes unpunished here. I mean, the requirement to seek a waiver has been on the books for decades. It is intentionally stringent and hard. There's dozens of NRC cases that have applied at the First Circuit, both in the 2008 case and the 2013 case have applied it. I guess two points to make about that. One, the determination about whether or not a waiver here really does involve technical assessments, technical assessments about whether the allegations were truly unique to the site or not, and that falls within the area of the highest deference owed to the agency. And then, secondly, the nature of what was sought for the waiver here was we're looking at new and more up-to-date SAM analysis done at other plants. That is absolutely what the Commission knew would happen in 1996 when they passed this rule that is being challenged in the wrong way in this appeal. They knew there was going to be more SAM analysis at other plants. That's what their complaint is here about Limerick. There's also SAM analysis that would apply to the other two sites here, the Watts Bar and the Comanche Peak. And what the Commission said in a very thorough and recent decision in 1996 is the utility of those new and better inputs are not going to move the needle, and that's not something that we should be devoting resources and scarce resources to. We can address this particular set of circumstances by rule once and only once is enough, and that applies to these five units, I guess, three sites. And if there's no further questions. Yes, I have one question. You heard me say in the beginning that there are other types of proceedings the Commission conducts. I don't know the technical terms, but there's a safety proceeding where it looks whether or not there are things that facilities ought to be doing because of technological changes, other types of concerns. So that the types of issues that L prohibits, if I put it that way, would come to the Commission in a different proceeding other than even in rulemaking, and an entity like NRDC could participate in that? I'm not sure if I followed all of those steps. I think it's important to draw a distinction between sort of the ongoing regulation of the safety of the plant. Yes. The operating plant. This is not that, emphatically. This is not that. That's a separate process. A whole separate scheme, a whole separate, and even when you get into the relicensing, you know, issues become is does the Commission look at something that needs to be looked at because it's going to operate for 20 more years, or is this something that we look at every day anyway? And that's the safety scheme, and I think it's important to understand, but if you're new to this industry, it's not always self-apparent because it's called a safety, you know, a SAMA, a safety accident mitigation alternative. But really the safety function of the NRC regulation is not indicated here at all. This is a very narrow mitigation for incidents that have already been determined the likelihood to be small. So if this infinitesimally unlikely event happens, is there something that could be done to mitigate the impact? And so I think that's what I was referring to. Thank you. Your Honor, I'd like to start with Judge Rogers with your questions about the F-2. Just to be clear, I think it's very important here. The draft SEIS has been issued. The final SEIS has been issued. The license has been issued. All of that has happened as part of the NEPA process. When the draft SEIS was issued, we submitted contentions against the draft SEIS making these same arguments because we had that concern. You know, could someone later say you were required to do that? And this is at JA 370 to 71. The Atomic Safety and Licensing Board said, adopting the arguments made by staff and Exelon at that time, that we can't submit those contentions because of the Commission's view that these issues are precluded. And it's explicitly said in that same order that if this order was issued before the final SEIS. It said if the final SEIS is issued, you can't submit contentions against that either on severe accident mitigation unless and until the Commission decides that these kind of contentions can go forward. So we've availed ourselves of every avenue that we can to try and get these issues. And it's also critical for the Court to appreciate that unless we're granted party status in the administrative process, we don't get judicial review. So under the current scheme as the Commission's interpreting it, we will never get the chance to challenge before the Commission or before this Court the adequacy of the information that we submitted to the Commission and that the Commission directed the staff to include in the final EIS. And that also completely distinguishes the Massachusetts case, which was about the Category 1 issue. The Commission in that case didn't say, oh, this is interesting information, Massachusetts. You know, we want the staff to consider it. They considered it as generic, and they said this is not appropriate to be considered in the Massachusetts relicensing. That's the complete opposite here. They said these are important issues. Staff, consider it in the final license. There's 20 pages in the final SEIS about the information we submitted, and their position is we will never get the opportunity before the Commission or before this Court to demonstrate that it wasn't done in a manner consistent with the National Environmental Policy Act. Finally, the Atomic Energy Act has this hearing right, which was designed by Congress to expand the rights of participation by parties. And what's happening in this case is that the Commission is using that hearing right as a barrier, not only to review before the Commission, but to judicial review. And that should just not be permitted. The risks of an accident, a severe nuclear accident, these are real risks, and mitigating against those accidents can make a real difference in people's lives. And the Commission should not be permitted to ignore 25 years of developments in severe accident mitigation in relicensing the plan just because it took a look at some mitigation alternatives 25 years ago. And that's what this case is about. What about my question about other procedures that address perhaps some of the concerns that your client had? My answer, Your Honor, is that that's the issue that was considered and resolved in UCS-1. Because the Commission in that case was saying these are issues that we have other processes to resolve. And what the Court said in that case was if it's a material issue to your relicensing decision, there has to be under the Atomic Energy Act a hearing opportunity. You can't exclude it from that. There is no other hearing opportunity that we would have. Well, you heard how counsel for the Commission distinguished UCS-1. It's a different kind of regulation at issue there. Well, it is a different regulation, of course. The facts are always different in different cases. The salient fact is that in both cases the Commission acknowledges that it's an issue material to relicensing. It was never resolved generically. I urge the Court to look at all of our citations demonstrating that contrary to what counsel for Exelon suggested, SAMAs were not resolved generically in the generic EIS. They are a Category 2 issue. They are site-specific issues that need to be considered on a site-specific basis. Thank you. Thank you. Case under advisement.
judges: Rogers, Brown, Kavanaugh